**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br>     Plaintiff, <br><br>     v. <br><br> SIDLEY AUSTIN BROWN & WOOD LLP., <br><br>     Defendant. | No. 05 C 0208 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

In July 2000, the Equal Employment Opportunity Commission ("EEOC") opened a direct investigation into Defendant Sidley Austin Brown & Wood's ("Sidley") compliance with the Age Discrimination in Employment Act ("ADEA") in connection with a downgrading of 32 of its partners and a change in its mandatory retirement age. Specifically, Sidley told 32 partners that they had to either accept a downgrade in their status, from partner to counsel or senior counsel, or leave the firm. At the same time, Sidley lowered its mandatory retirement age from 65 to a sliding scale between 60-65.

The EEOC commenced its work after it was widely reported by the media in late 1999 that the status of Sidley's older partners had been changed to create more opportunities for younger lawyers at the firm, and after the EEOC received a confidential complaint from one of the affected partners. On July 5, 2000, the EEOC notified Sidley of the investigation in a letter that included a designated charge number and was accompanied by a Request For Information. After receiving only partial responses from Sidley, the EEOC served it with a subpoena. This

ultimately led to an enforcement action before Judge Lefkow and an appeal to the Seventh Circuit. After receiving documents provided in accordance with the courts' orders and after completion of its investigation, the EEOC issued a Letter of Determination finding reasonable cause to believe that Sidley had violated the ADEA by downgrading certain partners on account of their age and by maintaining a mandatory retirement age. On September 29, 2004, after conciliation discussions between the parties proved unsuccessful, the EEOC issued a Notice of Failure of Conciliation to Sidley, and filed this lawsuit on January 13, 2005, seeking monetary damages and injunctive relief.

Sidley is now seeking partial summary judgment on the EEOC's claims involving individual relief for the affected partners. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The question presented in Sidley's motion – whether the EEOC may pursue individual relief for persons who failed to file charges under the ADEA and are now barred from bringing their own individual suits – is a purely legal one, requiring that I determine whether *EEOC v. North Gibson Sch. Corp.*, 266 F.3d 607 (7th Cir. 2001), was overruled by *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002).

In *North Gibson,* the Seventh Circuit held that the EEOC could not recover individual relief under the ADEA if none of the alleged victims had filed a timely charge of discrimination. 266 F.3d at 619-20. In that case, five of the seven claimants represented by the EEOC had not filed ADEA charges, and the remaining two had made untimely filings. The *North Gibson* decision was based on the premise that when the EEOC pursues an individual claim under the ADEA, it "steps into the shoes of the individual" and becomes that individual's representative.

*Id*. at 615. This privity, as the courts have put it, is created by the ADEA's distinctive enforcement scheme, wherein the right of the individual to bring an ADEA action is terminated upon the commencement of such an action by the EEOC. *Id*. The Court of Appeals reasoned that, because the EEOC was acting in a representative capacity, it should not be able to seek monetary relief on behalf of an individual who had no right to relief, as there were no "shoes" into which the EEOC could step. *Id*. Since each of the seven suits would have been procedurally barred, the Court of Appeals held that the EEOC could not seek monetary relief on behalf of those individuals. *Id*. at 616. In its opinion, the Court of Appeals explicitly differentiated the EEOC's right to seek such individual relief from the EEOC's right to seek injunctive relief, stating that "[w]hen the EEOC sues on its own behalf to obtain an injunction that prohibits discrimination, it promotes the public interest because its 'interests are broader than those of the individuals injured by discrimination.'" *Id*. (quoting *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1291 (7th Cir. 1993)).

If there were no question concerning the ongoing validity of *North Gibson*, the individual relief sought by the EEOC in this case would certainly be barred. Here, the EEOC received a confidential request for an investigation but no ADEA charges. Since the time for such charges has long since expired, none of the 32 Sidley partners affected by the change in retirement policies would be entitled to seek relief from this or any other court, and I would be compelled to grant Sidley's motion.

A question about the validity of *North Gibson*, however, is raised by the Supreme Court's decision in *Waffle House*. In that case, the Supreme Court held that the EEOC could seek monetary relief for individuals whose claims were barred because each had signed a mandatory

3

arbitration agreement with his or her employer. *Waffle House*, 534 U.S. at 295. The Court found that the Americans With Disabilities Act ("ADA") made "the EEOC the master of its own case" and "confer[red] on the agency the authority to evaluate the strength of the public interest at stake." *Id*. at 291. The Court further found that "it is the public agency's province–not that of the court–to determine whether public resources should be committed to the recovery of victim-specific relief." *Id*. at 291-92. The Court emphasized that the EEOC may seek "to vindicate a public interest . . . even when it pursues entirely victim-specific relief." *Id*. at 296. With this reasoning, the Court put an end to the distinction recognized in earlier cases, like *North Gibson,* between the EEOC's ability to seek individual monetary relief and its ability to seek injunctive relief. In this way, the Court makes it clear that the EEOC's right to bring suit seeking individual monetary relief goes beyond that of the individual and reaches the territory of public interest, thereby allowing the EEOC to seek relief for individuals, such as the affected Sidley partners in this case, who could not, for a variety of reasons, do so themselves.

Sidley, of course, argues that the *Waffle House* decision is applicable to only those cases in which the EEOC is seeking monetary relief on behalf of individuals who are subject to arbitration agreements.[1] This notion is dispelled by the Seventh Circuit's decision in *EEOC v.*

---

[1]Sidley also contends that *Waffle House* does not apply to the ADEA because its enforcement scheme is distinct from that of the ADA. I find this reading of *Waffle House* to be particularly strained in light of the Seventh Circuit's decision in *EEOC v. Bd. of Regents of the Univ. of Wis.*, 288 F.3d 296 (7th Cir. 2002). As discussed herein, in *BOR*, the Court of Appeals applied *Waffle House* to a case brought by the EEOC under the ADEA, clearly demonstrating that the rationale is applicable to ADEA cases. 288 F.3d at 300. The language in the *Waffle House* decision also indicates that it would be applicable to the ADEA. *Waffle House* discusses the province of the EEOC over discrimination cases during the first 180 days after a complaint is filed with the agency. The Court notes that during this 180-day period, the EEOC has full control of the complaint's litigation. *Waffle House*, 534 U.S. at 291. Within that period, an employee must obtain a right-to-sue letter before bringing a complaint in court and if, during that

*Bd. of Regents of the Univ. of Wis.*, 288 F.3d 296 (7th Cir. 2002). In *BOR*, the Court of Appeals applied the reasoning developed in *Waffle House* to a case involving sovereign immunity–an area of law wholly unrelated to arbitration agreements. In determining that the EEOC had an independent right to sue the state of Wisconsin (and therefore the Board of Regents of the University of Wisconsin), the Court of Appeals relied heavily on the language from *Waffle House* stating that the EEOC was "the master of its own case" and could seek "to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief." *Id*. at 300 (quoting *Waffle House*, 534 U.S. at 296). The Court of Appeals found that this reasoning forestalled any argument that the EEOC was merely "standing in the shoes of the individuals" or was "acting in privity with them as their representative." *Id*. at 299-300.

Yet, Sidley urges me to base my opinion on exactly the same kind of privity logic that failed to persuade the courts in *Waffle House* and *BOR*. Sidley argues that I should deny the EEOC the right to seek individual monetary relief on behalf of the affected Sidley partners because the partners themselves have no right to sue. I disagree. *Waffle House* makes clear that EEOC's ability to seek monetary relief on behalf of individuals is derived from its own statutory rights to advance the public's interest and is unrelated to any individual's right. I find it clear enough from the holdings in both *Waffle House* and *BOR* that the privity arguments seen in *North Gibson* are no longer applicable and that *Waffle House* does, in fact, overrule that decision.

---

time, the EEOC decides to pursue its own suit, the individual has no independent cause of action. *Id*. This period creates an enforcement scheme much like that of the ADEA in which the EEOC's ADEA suit trumps any suit filed by an individual.

In *BOR*, the Seventh Circuit did contemplate curtailing the EEOC's public interest based rights when there is another compelling, countervailing interest at issue. 288 F.3d at 300. As the Court notes, it would have to be more important than the right to arbitration or sovereign immunity. *Id*. Sidley contends that allowing the EEOC to seek monetary relief for individuals who are barred from doing so themselves, since they have failed to file charges within the statutorily allowed period, contravenes an employer's interest in a reasonably speedy resolution of discrimination claims, an interest which underlies all of our discrimination statutes. Sidley claims that allowing the EEOC to revive untimely claims obliterates the otherwise strictly enforced statutes of limitations associated with Title VII, ADA and ADEA cases. In the abstract, Sidley's argument does carry some weight, but in the context of this case it does not have much force. The EEOC began investigating Sidley's retirement practices approximately seven months after the changes to its policies, enacted in late 1999, were widely broadcast in the media and after receiving a confidential complaint. On July 5, 2000, the EEOC notified Sidley of the investigation with a letter that was accompanied by a document request. Over the next two years, the EEOC and Sidley battled over that document production. In July 2004, the EEOC completed its investigation and sent a Letter of Determination to Sidley stating that it had found reasonable cause to believe that Sidley's retirement policies violated the ADEA. After engaging in unsuccessful conciliation discussions, the EEOC filed this suit on January 13, 2005.

Throughout, these proceedings have been of great interest not only to Sidley, but also to most other large law firms across the country. It would be difficult for Sidley to argue that the EEOC's suit has come as a surprise, that the EEOC's claims concerning their new retirement policy are somehow stale, or that it had no reasonable opportunity for a speedy resolution of this

6

matter. This is almost certainly why Sidley focuses on the possibility that the EEOC might bring their retirement policies dating back to 1978 into the suit. This argument, however, should really be directed toward determining the relevant class of individuals who may be properly represented by the EEOC in this suit. There may come a time when it is appropriate for me to set some temporal limits on the class of persons who may be represented in this case. But, that time is not now. The possibility that the individual claims of some partners affected by Sidley's longstanding retirement policies may be too remote for this case does not justify throwing out all the individual claims of partners affected by Sidley's newly implemented retirement plan. Accordingly, I find that concerns over bringing stale claims do not override the EEOC's right to advance the interests of the public by seeking individual relief for at least some individuals in this case.

**Motion for Reconsideration and Certification for Interlocutory Review.**

Sidley argues against my conclusion. It's two-part argument is worth consideration. The first reason Sidley gives for changing my decision is the rule that a District Court must follow the precedent of the Court of Appeals until the Court of Appeals specifically overrules that precedent. The Supreme Court has stated that all inferior courts must follow its clear precedent no matter how much its own later opinions have demolished the rationale for that precedent. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). Doubts about the reach of *Rodriguez* arose in the aftermath of the Supreme Court's evisceration of the sentencing guidelines in *Blakely v. Washington*, 542 U.S. 296 (2004). *See, e.g.*, *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004) (majority and dissenting opinions). The doubts have been

wiped away by the Court's comments in *Eberhart v. United States*, ___U.S.___, 126 S. Ct. 403, 407, 163 L. Ed. 2d 14, 21 (2005).

Sidley cites two Seventh Circuit opinions setting forth my obligation to "follow the decisions of [the Seventh Circuit] whether or not [I] agree." Reiser v. Residential Funding Corp., 380 F.3d 1027, 1029 (7th Cir. 2004). *See also*, *Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th Cir. 1994) (must follow precedent not expressly overruled).

*Donohoe* is not the best case to illustrate this proposition, because it was deeply intertwined with the doctrine of law of that particular case and may have been concerned with the notion of a trial judge's ability to depart from an appellate opinion in the same case or, in military terms, to disobey the direct order of a superior. *Reiser* is a better case for Sidley but it does not carry the day. There, the District Judge had disregarded a Court of Appeals precedent construing state law for the reason that an Illinois Appellate Court had reached an opposite conclusion on the point. The Court of Appeals reasoning is instructive.

> A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law, for under *Erie* our task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past. But decisions of intermediate state courts lack similar force; they, too, are just prognostications. They could in principle persuade us to reconsider and overrule our precedent; assuredly they do not themselves liberate district judges from the force of our decisions.

*Reiser*, 380 F.3d at 1029.

A proper reading of this language means that the District Judge *is* free to disregard circuit precedent that is contrary to the rule pronounced by the court possessing final authority to decide that particular question of law. Here, the Supreme Court of the United States has final authority to decide this particular question of law. If its decision conflicts with the circuit precedent, I

8

would be ignoring the dictates of the "hierarchical system" in which we operate. A district judge should not wait for a signal from the Court of Appeals before following the Supreme Court's rulings.

I do not think Sidley argues to the contrary. Its argument is that I am not free to disregard circuit precedent on the grounds that it has been *implicitly* overruled. I agree that ignoring circuit precedent because the rationale for that precedent has been eroded to its vanishing point is problematic. Rationales are not holdings and, even when the stated rationale has been shredded, it does not mean that the holding may not be justified by a different rationale.

It is, though, sometimes difficult to decide whether a Supreme Court decision is an implicit overruling. There are few who would urge that a legal rule can only be voided by expressly stating the rule, citing the prior cases and announcing they are overruled. In my view the question to ask is whether the *holding* (not the rationale) of the Supreme Court can be squared with the *holding* (not the rationale) of the Court of Appeals–whether any real distinction between the two holdings can be found without the intellectual contortions commonly (and perhaps unfairly) attributed to John Duns Scotus.

I adhere to my decision. It was the holding of the Supreme Court that caused me to find that *North Gibson* did not control this case. The Court held it was the EEOC's province to vindicate a public interest by pursuing monetary damages for an individual even when the individual could not or did not make the claim themselves (subject to limitations not yet relevant here). The claim that *Waffle House* applied only to the cases where individuals were bound by arbitration agreements seems to me to be the sort of "rationale" based argument disapproved in earlier cases. What might be left of the defendant's argument is disapproved by the holding in *Board of Regents*.

Sidley's last remaining argument is that *North Gibson* is still good law because in *Waffle House*, the Supreme Court specifically tells us that *EEOC v. U.S. Steel Corp.*, 921 F.2d 489 (3rd Cir. 1990), is still good law. When mentioning that decision, the Court stated that, "[i]t is true . . . that [the employee's] conduct may have the effect of limiting the relief that the EEOC may obtain in court." *Waffle House*, 534 U.S. at 296. It then cited *U.S. Steel* as holding that, "individuals who litigated their own claims were precluded by res judicata from obtaining

individual relief in a subsequent EEOC action based on the same claims." *Id*. at 297. In considering both the context and language of the Supreme Court in discussing *U.S. Steel*, I do not read it as precluding the EEOC from proceeding to litigate on the merits of whether an individual merits relief. The Court's actual concern and reason for citing *U.S. Steel* is most clearly expressed in the last words of the relevant paragraph. "As we have noted, it 'goes without saying that the courts can and should preclude double recovery by an individual.'" *Id*. (internal citations omitted). In the end, Sidley may be right about the survival of *North Gibson*, but the Supreme Court's treatment of *U.S. Steel* is not persuasive on that point. Double recovery is not at issue in this case.

The request to certify the question for interlocutory review is more difficult to answer, and not because there is little chance I could be wrong. Another judge of this Court has already reached the contrary conclusion, which shows that the issue is fairly contestable. It is a question of controlling law.

The standard at issue is whether early appellate resolution will speed up the litigation. *See Arenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). Sidley argues that the discovery process in this case would be vastly simplified if it did not have to deal with questions of individual relief. While this might ordinarily be true, it is untrue here. The case before me presents fairly novel claims whose resolution might significantly affect the way professional firms using partnership forms conduct their internal affairs. In other words, this is an important question for a broad range of institutions beyond the one which is litigating here. The problems to be addressed are described in *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 701-07 (7th Cir. 2002).

The early judicial airing out of this issue generally, and in this case specifically, will require extensive discovery of how individuals were treated and why. Without a lot of detail, the merits of a broad legal theory rarely applied in this context will be difficult to discern. When the criteria for a decision are well established then less discovery will be required, or so I have noted in the cases before me.

The better argument for certification lies in the nature of the trial that would be conducted. If all that is at stake is injunctive relief, the volume of evidence that would need to be introduced would shrink. To show a pattern of age discrimination, the parties can rely on

representative cases.[2] There will be no need to calculate the exact economic consequences for each individual. There will be fewer concerns with preserving the anonymity of the individuals said to be damaged by defendant–an interest that both sides recognize as valid. In short, to establish whether Sidley is covered under the ADEA and whether it violated the law would take far less trial and trial preparation time. So, too, would the determination, if the EEOC makes its case, of what forward looking remedies ought to be imposed on defendant. Early resolution of the viability of *North Gibson* would, in my judgment, speed up the litigation. This is especially true here because the discovery can be ongoing while the interlocutory appeal is heard. There will, therefore, be nothing to delay preparation for trial. A ruling in defendant's favor would speed the litigation.[3]

I grant the motion for certification and direct defendant to prepare for review by Court and the EEOC a proposed order containing the question or questions to be certified.

Defendant's Motion for Summary Judgment is DENIED initially and on reconsideration. Defendant's Motion of Certification for Interlocutory Appeal is GRANTED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: December 20, 2005

---

[2] I do not mean to suggest that this is the complete universe of evidence that may be needed. I refer only to the quantity of evidence required as to the individuals whose treatment by defendant is at issue.

[3] Even if the defendant loses the appeal, a ruling might still slightly speed up the trial. It will spare the parties what I expect to be a long series of objections and arguments over the precise ambit of relevant evidence.