IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | No. 05 c 0208 |
| Plaintiff, | ) | Honorable James B. Zagel |
| v. | ) | Magistrate Martin C. Ashman |
| SIDLEY AUSTIN BROWN & WOOD LLP, | ) | |
| Defendant. | ) | |

**EEOC'S SUR-SUR-REPLY IN SUPPORT OF EEOC'S MOTION TO COMPEL PRODUCTION OF CLIENT COMPLAINT INFORMATION OR TO PRECLUDE RELIANCE THEREON**

It is unclear why Sidley was interested in filing a Sur-Reply since its Sur-Reply does little more than rehash the arguments it made in its initial response to EEOC's motion to compel. Sidley does not address any of EEOC's factual or legal arguments, except to say that the demotion of partners pursuant to the Momentum Plan was not a reduction-in-force in the partnership ranks, a point which is factually and legally incorrect. Sidley continues to ignore the factual context in which it made the challenged decisions. Perhaps this is because when one examines the Sidley's own testimony and documents describing the process by which the decisions were made, it is abundantly clear that EEOC is entitled to the discovery it seeks.

**A. EEOC Is Entitled to Discovery With Respect to the Defined Group From Which Sidley Decided Whom to Retain and Whom to Demote**

In 1999, Sidley decided to reduce the number of partners at the firm in order to increase the profits-per-partner as reported in the American Lawyer. Eden Martin Dep., at pp. 205-206, 238-242, attached as Exhibit A.[1] As stated in EEOC's Reply Memorandum, this undertaking was dubbed the "Momentum Project" or "Momentum Plan." Pursuant to the Plan, Sidley

[1] Exhibit A is filed under seal in accord with the June 20, 2006 Protective Order.

reviewed each and every partner and decided whom to retain as a partner and whom to strip of partnership status.

Although Sidley reduced the number of partners at the firm through the Momentum Project, Sidley claims that the elimination of partners was not a reduction-in-force. Sidley's sole basis for this assertion appears to be that the 1999 thinning of the partnership ranks resulted in demotions from partnership status rather than terminations from the firm. Seventh Circuit case law makes clear, however, that reductions-in-force can involve demotions or transfers as well as terminations. *See King, et al. v. General Electric Co.*, 960 F.2d 617, 618, 621 (7th Cir. 1992)(In a RIF, a plaintiff may establish a prima facie case under the *McDonnell-Douglas* framework by showing "she was within the protected age group; (2) she was performing according to her employer's legitimate expectations, (3) she was terminated or demoted, and (4) others not in the protected class were treated more favorably").[2]

Presumably Sidley does not want the demotions pursuant to the Momentum Plan to be characterized as a RIF because of the Seventh Circuit's observation that in a RIF an employer "decides who from a defined group it will 're-hire' or retain, considering all existing employees as roughly like applicants for retention." *Adams, et al. v. Indiana Bell Telephone*, 231 F.3d 414, 422 (7th Cir. 2000). Sidley knows that the defined group from which it decided who to retain and who to demote consisted of all partners, regardless of practice group, office, part-time versus full-time status, etc. and it does not want to allow discovery on all these "applicants for retention."

Whether the demotions are characterized as a RIF or not, however, the fact remains that Sidley reviewed each and every partner at the firm in deciding who to retain and who to demote

[2] In the RIF context, a plaintiff, of course, may proceed under the direct and circumstantial methods of proof as well as under the *McDonnell-Douglas* method. *See id.*

and in doing so the same seven-member decision-making body applied the same criteria to each and every partner in each and every practice group and in each and every office of Sidley. Sidley has thus defined the relevant group for purposes of examining the decisions at issue herein and Sidley cannot narrow the scope of that group to serve its purposes in discovery.

**B. Sidley's Proposed Compromise Is Inappropriate As It Is At Odds With How Sidley Made The Decisions At Issue**

Sidley makes the very same arguments it made in its initial response brief about why discovery should be allowed only with respect to a subset of the partners considered for retention or demotion under the Plan. In support of its argument, Sidley continues to cite cases on the "similarly-situated" requirement which are factually inapposite. Sidley does so despite Seventh Circuit precedent making clear that the factors relevant in determining whether someone is similarly situated "depend[ ] on the context of the case." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *quoting Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). As explained in EEOC's Reply Memorandum, Sidley's decision-making process under the Plan renders each partner in the firm, no matter what office or practice group he or she worked in, a potential comparator -- each partner had the same title, was judged by the same seven member decision-making body against the same factors, no subset of which was dispositive.

**1. Sidley's "Substantially Younger" Limitation on Discovery is Inappropriate**

Although Sidley acknowledges that courts relax the substantially younger requirement (for *proving* discrimination), when there is direct evidence an employer considered age significant, Sidley continues to propose that a substantially younger limitation be placed not only on proving the case, but also on discovery. In so doing, Sidley has completely ignored the

sampling of the plethora of direct evidence in this case that EEOC set forth in its Reply Memorandum.

**2. Sidley's Part-Time/Full-Time Distinction is Inappropriate**

If Sidley had considered only part-time partners or only full-time partners for a change in status, limiting discovery to only full-time or only part-time partners might make sense. But this is not what Sidley did. Indeed, one of the demoted partners was working on a part-time basis and several partners who were initially targeted for demotion, but not ultimately selected, were part-time.

**3. The Same Practice Group Limitation is Inappropriate**

In its Sur-Reply, Sidley claims there is no record support for EEOC's proposition that Sidley did not compare partners to each other – either within practice groups or otherwise – in making the decisions at issue. However, in its Reply Memorandum, EEOC specifically cited the testimony of Management Committee member James Archer in support of this proposition. Moreover, on March 20, 2007, Executive Committee Member Peter Ostroff testified that the decisions at issue were not made on a practice group basis.

**4. The Domestic Office Limitation is Inappropriate**

Sidley claims that discovery should be limited to Sidley's domestic offices because EEOC "makes no attempt to establish that a complaint about a London attorney would be relevant to a decision about a Chicago attorney." Given that Sidley's seven-member Management Committee considered each partner in each international office for a change in status and judged them against the same criteria as partners in the domestic offices, there can be no doubt as to the potential relevance of discovery as to partners in the international offices.

**5. The Hours Limitation is Inappropriate**

As explained in EEOC's Reply Brief, low hours cannot be used to screen out potential comparators because low hours was not dispositive and indeed, played a role of unknown significance as low hours mattered for some partners, but not for others. Sidley has utterly failed to address this fact in its Sur-Reply.

**C. Sidley Has Failed to Meaningfully Address EEOC's Pretext Argument**

In its Sur-Reply Sidley does not address EEOC's pretext argument except to say that *Forrester v. Rauland-Borg Corp*, 453 F.3d 416, 419 (7th Cir. 2006) clarified that a plaintiff establishes pretext by showing that the employer's articulated reason for taking an adverse action was not the actual motivation for the action and eliminated the "insufficient to motivate" language from the pretext analysis. *Forrester* in no way changes EEOC's argument regarding why client complaint discovery is relevant to a showing of pretext.

**Conclusion**

For the foregoing reasons and for all the reasons stated in EEOC's Motion to Compel and Reply Memorandum in Support Thereof, EEOC's Motion to Compel Production of Client Complaint Information should be granted and EEOC should not be precluded discovery in accordance with Sidley's proposed limitation on comparative issues.

Respectfully submitted,

/s/ Laurie S. Elkin

Laurie S. Elkin
Deborah L. Hamilton
Justin Mulaire
U.S. Equal Employment Opportunity Commission
500 W. Madison, Ste. 2800
Chicago, Illinois 60661
(312) 353-7726
Laurie.elkin@eeoc.gov

**CERTIICATE OF SERVICE**

I, Laurie S. Elkin, an attorney, hereby certify that on **March 26, 2007**, I caused a true and complete copy of the foregoing **EEOC'S SUR-SUR-REPLY IN SUPPORT OF EEOC'S MOTION TO COMPEL PRODUCTION OF CLIENT COMPLAINT INFORMATION OR TO PRECLUDE RELIANCE THEREON** to be served by Electronic Mail Transmission via ECF as to Filing Users upon the following:

Lynn H. Murray (lmurray@grippoelden.com)
Maile Solis (msolis@grippoelden.com)
Grippo & Elden, LLC
111 South Wacker Drive
Chicago, Illinois 60606